# EXHIBIT 4

# DECLARATION OF JAIME A. BARTLETT

# IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:18-cv-21174-MARTINEZ/OTAZO-REYES

CARLOS SANCHEZ,

    Plaintiff,

vs.

TEAM HEALTH, LLC, f/k/a TEAM HEALTH, INC.;
and PARAGON CONTRACTING SERVICES, LLC
f/k/a PARAGON CONTRACTING SERVICES, INC.;
TEAM HEALTH HOLDINGS, INC.; AMERITEAM
SERVICES, LLC; HCFS HEALTHCARE FINANCIAL
SERVICES, LLC,

    Defendants.

_____/

## SUPPLEMENTAL DECLARATION OF JOHN R. STAIR

1. My name is John R. Stair and I serve as the Chief Operations Counsel and Assistant Secretary of Team Health Holdings, Inc. ("Team Health Holdings"). I serve in the same capacities for the other entities I describe herein[1]. I make this Supplemental Declaration based on my personal knowledge over the course of 20 years of employment and to supplement my original Declaration ("Original Declaration") in the above-captioned matter based on the additional allegations made in Plaintiff's Second Amended Class Action Complaint ("2AC").

2. I have reviewed the 2AC and provide this Supplemental Declaration to address additional allegations in the 2AC, many of them simply too generalized or unsourced to permit a

---

[1] I am not, as the 2AC alleges, *see* ¶¶ 51 and 52, nor have I ever been, CEO of HCFS Healthcare Financial Services, LLC or Team Health, LLC. Further, paragraph 58 of the 2AC alleges "Mr. Stair is responsible for the day-today [sic] operations of the Team Health business." That allegation is entirely incorrect. The day-to-day operations of the operating affiliates, like the Defendants named in the 2AC, are managed by the senior management and officers for each respective affiliate, many of which I serve as Chief Operations Counsel and Assistant Secretary.

1

specific or complete response, and many of which appear intended to conflate and confuse certain matters relating to the use of the TEAMHEALTH brand and logo, to address the inaccurate and conclusory assertions that Team Health Holdings controls and dominates the functions and operating activities of all of the operating affiliates and subsidiaries associated with the TeamHealth organization, and to again confirm Team Health Holdings lack of connection to the State of Florida. The random, inconsistent, and interchangeable use in the 2AC of certain undefined (or imprecisely defined) terms like "Team Health Organization," "TH," Team Health" and "TH Facilities," also made specific and meaningful responses to many of the allegations far more challenging, if not completely impractical or impossible.

3. Unlike Team Health Holdings, the other Defendants have not sought dismissal, on personal jurisdictional grounds, because they all acknowledge that, irrespective of the lack of merit of Plaintiff's claims and causes of action, they all conducted (or did at times relevant to this action) business, to varying degrees, in the State of Florida, albeit never at the direction or control of Team Health Holdings.

4. TEAMHEALTH: "Team Health," "TEAMHEALTH," or "TEAMHEALTH" refer to a registered, trade-marked name and logo routinely used by the numerous operating subsidiaries and medical groups (and their respective medical providers) throughout the country affiliated with the TEAMHEALTH brand and logo (and often used by others in the healthcare community (like hospitals) that may associate these companies with the TEAMHEALTH brand or logo). Such references are not, in isolation, references to a particular entity, such as AmeriTeam, LLC, Team Finance, LLC, Paragon Contracting Services, LLC, HCFS Healthcare Financial Services, LLC, Team Health LLC or Team Health Holdings, Inc. The use of the TEAMHEALTH brand and logo denotes nothing more than a particular entity's affiliation or association with the TEAMHEALTH

2

brand. The use of the TEAMHEALTH brand or logo by operating affiliates, like the ones I describe in this paragraph, does not suggest or imply any association or connection to Team Health Holdings, Inc, which I indicated in my original Declaration is a non-operating holding company that neither performs (nor directs) any of its holding company activities in (or from) Florida.

5. <u>Paragon Contracting Services, LLC[2] ("Paragon"):</u> Defendant Paragon is a properly formed, active Florida limited liability company. Its managing member is Southwest Florida Emergency Management, LLC, which is also an active limited liability company formed in accordance with Florida law. Paragon was a properly formed, active Florida corporation until its conversion, in accordance with Florida Law, to a Florida limited liability company in 2014 and has its own officers, and its own by-laws and articles of formation/organization. Paragon maintains its annual registration and license to do business in those states in which it actively conducts business, which are primarily located in the southeast region of the country. Paragon has been registered to do business in Florida since 1996 (roughly 18 years before the RVU compensation provisions at issue in this litigation were implemented). Paragon's primary purpose and function within the TEAMHEALTH organization is completely separate from the other TEAMHEALTH affiliated entities described herein, although it shares a common interest with them in aligning itself and acting to fulfill the overall goals, mission and vision of the TEAMHEALTH organization.

6. Paragon enters into written agreements with hospitals to provide staffing (primarily emergency department coverage) at various hospitals and hospital systems in various southeastern

---

[2] Like some of the other entities I describe herein, Paragon Contracting Services, Inc. converted, in accordance with state law, from a corporation to a limited liability company. These conversions occurred at various times relevant to this litigation. The conversion of certain entities has no bearing on the substance of my testimony or the legal issues in this case.

3

Case 1:18-cv-21440-JEM Document 79-3 Entered on FLSD Docket 12/18/2020 Page 5 of 18
Case 1:20-cv-04600-JSR Document 79-3 Filed 10/06/22 Page 5 of 18

states, including in Florida at North Shore hospital in North Miami Beach, Florida where the named Plaintiff, Dr. Sanchez, works.[3]

7. Paragon also enters into Medical Professional Independent Contractor Agreements with physicians (like the named Plaintiff) pursuant to which these physicians provide emergency medicine services and coverage to the hospitals with which Paragon has contracted (like North Shore) to staff their emergency departments. The RVU compensation provisions upon which this litigation is based, as alleged in the 2AC, are set forth in a specific addendum (or perhaps addenda if there were changes to the RVU plan provision) to the Medical Professional Independent Contractor Agreement(s) which Dr. Sanchez and his medical provider colleagues at North Shore hospital entered into with Paragon, and only Paragon.

8. Paragon maintains its own, separate financial statements and its assets exceed its liabilities. Paragon generates substantial operating revenues from billing for the medical staffing it provides through the southeast United States and it has always been sufficiently capitalized and otherwise prepared to fund potential expenses or financial obligations that it anticipates may come up in the ordinary course of its business. By way of just one of many examples of how Paragon is prepared to meet its financial obligations, Paragon has professional liability insurance ("PLL coverage") for itself and its contracted medical providers who may be named in medical malpractice cases. Paragon does not "siphon" funds from the other medical groups and operating entities affiliated with the TEAMHEALTH brand, including any of the other Defendants named in the 2AC. Paragon has never not been able to meet its financial obligations.

9. AmeriTeam Services, LLC ("AmeriTeam"): Defendant, AmeriTeam, is a properly formed Tennessee limited liability company and one of the operating subsidiaries part of the

---

[3] References to "the named Plaintiff" or "Dr. Sanchez" refer of course to the Plaintiff bringing this litigation.

4

TEAMHEALTH organization. AmeriTeam's managing member is non-party Team Finance, LLC. AmeriTeam has its own by-laws and articles of formation/organization and its own officers. Unlike Paragon which provides medical staffing through its contracted medical providers like Dr. Sanchez, AmeriTeam enters into written agreements (called "Support Services Agreements") with operating affiliates and subsidiaries (like Paragon) that are part of the TEAMHEALTH organization pursuant to which it provides various support and administrative services to assist such companies in their respective business operations. These services include payroll, procuring professional liability insurance for affiliated groups and medical providers (like Paragon and Dr. Sanchez), information technology (including owning and maintaining the TEAMHEALTH website and domain), finance, tax, compliance, accounts payable, human resources and entering into agreements with commercial third-party payors (i.e., health insurance plans). AmeriTeam provides these services pursuant to a Support Services Agreement and receives a management fee for providing such services. AmeriTeam does not enter into contracts with medical providers that have RVU compensation provisions. AmeriTeam does not provide medical care and does not contract with emergency medicine physicians, like Dr. Sanchez, who provide emergency medicine care.

10. AmeriTeam maintains its own separate internal financial statements and its assets exceed its liabilities and it has always been sufficiently capitalized or otherwise prepared to fund potential losses and financial obligations that may occur in the ordinary course of its business and it has never not been able to meet its financial obligations. It maintains its annual registration and license to do business in those states in which it actively conducts business, which are located throughout the country. AmeriTeam generates its own revenues from the above-described services and does not "siphon" funds from the other medical groups and operating entities affiliated with the TEAMHEALTH brand, including from any of the other Defendants named in the 2AC.

5

AmeriTeam's primary purpose and function is completely separate from the other TEAMHEALTH affiliate entities I describe herein, although AmeriTeam, because of its function and purpose within the TEAMHEALTH organization, is uniquely situated to support and assist other affiliated operating entities in aligning themselves with the overall mission, values, goals and vision of the TEAMHEALTH organization.

11. Team Health LLC ("Team Health LLC"): Defendant Team Health, LLC is a properly formed Tennessee limited liability company and is currently a non-operating subsidiary in the TEAMHEALTH organization, serving primarily as a holding company. Its membership interest is owned (100%) by Team Finance, LLC, and not Team Health Holdings, as alleged in the 2AC (*see* ¶ 6). However, prior to January 1, 2015, Team Health, Inc. (later converted to Team Health, LLC) provided various administrative and support services (e.g., payroll, human resource assistance, etc.,) to operating subsidiaries (like Paragon) that are part of the TEAMHEALTH organization—the same type of support services AmeriTeam now provides to Paragon (and began providing to Paragon as of January 1, 2015). Prior to January 1, 2015, Team Health, Inc., and Paragon were parties to a Support Services Agreement. Team Health, Inc., received a fee for the above-described services it provided to Paragon pursuant to the Support Services Agreement.

12. Team Health, LLC does not provide medical care and does not contract with emergency medicine physicians, like Dr. Sanchez, who provide emergency medicine care. Team Health, LLC, now (and before its conversion from a Florida corporation), was never a party to Dr. Sanchez' Medical Professional Independent Contractor Agreement, including any of its RVU compensation provisions. At no time did Team Health, LLC hold Paragon out as its agent or exercise dominion or operational control over Paragon. Team Health LLC maintains its own separate books and records and its own internal financial statements. It has its own officers, by-

6

laws and articles of formation/organization. Prior to January 1, 2015, it maintained its annual registration and license to do business in those states in which it actively conducted business, but no longer does so because, since January 1, 2015, its main function and purpose has been as a nonoperating holding company.

13. Team Health, LLC's assets exceed its liabilities and it has always been sufficiently capitalized or otherwise prepared and ready to fund potential losses and financial obligations that may occur in the ordinary course of its business and has never not met any of its financial obligations, including through January 1, 2015, after which its primary purpose and function was as a non-operating holding company. Team Health, LLC, including before its conversion to an LLC, generated its own revenues from the support services it provided operating affiliates and does not (and did not) "siphon" funds from the other medical groups and operating entities affiliated with the TEAMHEALTH brand, including the other named Defendants in the 2AC. Team Health, LLC never held Paragon out as its agent in connection with Paragon entering into employment/independent contractor agreements with Dr. Sanchez and/or his colleagues on whose behalf he seeks to bring this class action.

14. Non-Party Team Finance, LLC: As I indicated in my original Declaration, *see* paragraph 8, Team Finance, LLC is a properly formed non-operating holding company with no employees and whose membership interest is owned by Team Health Holdings, Inc. Team Finance, LLC, owns 100% of the membership interest in Team Health, LLC and, as such, and contrary to what is alleged in ¶ 6 of the 2AC, Team Finance, LLC is the direct parent company of Team Health, LLC. Team Finance, LLC. does not provide medical care and does not contract with emergency medicine physicians, like Dr. Sanchez, who provide emergency medicine care. All of Team Finance, LLC's holding company activities are performed in (or from) Knoxville Tennessee.

7

15. <u>HCFS Healthcare Financial Services, LLC ("HCFS)</u>: HCFS is a properly formed Florida limited liability company and its president is Joe Carman. Mr. Carman has no title with AmeriTeam, Team Health, LLC, Team Finance, LLC or Team Health Holdings. HCFS enters into written agreements to provide billing services (called Billing Services Agreements) to operating affiliates comprising the TEAMHEALTH organization. Paragon, for example, subcontracts its coding and billing functions to HCFS, for which HCFS receives a fee for its services. HCFS does not provide medical care and does not contract with emergency medicine physicians, like Dr. Sanchez, who provide emergency medicine care. HCFS has no role in the creation of RVU based compensation plans used by affiliated medical groups, like Paragon. HCFS has been active since 1996, and has its own officers, by-laws and articles of organization. It maintains its own, separate internal financial statements. It maintains its annual registration and license to do business in those states in which it actively conducts business.

16. HCFS has always been sufficiently capitalized or otherwise prepared to fund potential losses and financial obligations that may occur in the ordinary course of its business and it has never not been able to meet its financial obligations. HCFS generates its own substantial revenues from the billing services it provides and does not "siphon" funds from the other medical groups and operating entities affiliated with the TEAMHEALTH brand, including the other Defendants named in the 2AC. HCFS's primary purpose and function within the TEAMHEALTH organization is completely separate from the other TEAMHEALTH affiliate entities I describe herein, although it obviously shares a common interest in aligning itself with the overall mission, values and goals of being associated with the TEAMHEALTH brand and also obviously shares a common interest with the operating affiliates (like Paragon) with which it has entered into Billing Services Agreements.

8

17. <u>Team Health Holdings, Inc. ("Team Health Holdings")</u>. As I indicated in my original Declaration, Team Health Holdings is an active, properly formed Delaware corporation, and has always been a non-operating holding company whose sole asset is its investment in, and ownership of, the membership interests of Team Finance, LLC. Team Health Holdings is not the direct parent company of any of the other Defendants in this action. Team Health Holdings performs its limited holding/parenting company activities from Knoxville, Tennessee, and never in (or from) Florida. These activities generally relate to strategic planning and goals, implementation of overall vision, values, mission and direction of the TEAMHEALTH organization, which from time to time may include marketing, branding, strategic direction and relationships, growth and finance/accounting related activities for the various operating affiliates and subsidiaries compromising the TEAMHEALTH organization, including, among hundreds of other companies, AmeriTeam, HCFS, and Paragon. These limited, operating holding/parent company activities are conducted, and coordinated from Knoxville, Tennessee and they do not involve the exercise of dominion or operational control or direction over the day-to-day activities or business practices of operating affiliates and subsidiaries, including AmeriTeam, HCFS and Paragon.

18. In the case of HCFS, for example, Team Health Holdings limited holding company activities do not involve operational control or even operational oversight of the billing and coding functions HCFS performs for Paragon pursuant to its Billing Services Agreement. In the case of Paragon, Team Health Holdings limited holding company activities do not involve operational control or even operational oversight over Paragon entering into contracts with hospitals in the southeast region of the country to staff their emergency departments or Paragon's hiring of emergency medicine physicians (like Dr. Sanchez) and/or the preparation and entering of the contracts with medical providers (like Dr. Sanchez). In the case of AmeriTeam now (and Team

9

Health, Inc. before it), Team Health Holdings' limited holding company activities do not involve operational control of the administrative and support services and assistance they provide to affiliated medical groups (like Paragon) such as payroll, benefits, procurement of contracts with health insurance plans, procurement of professional liability insurance for its affiliated groups and medical providers, maintenance of the TEAMHEALTH Code of Conduct, compliance program or maintenance of the TEAMHEALTH website and information technology systems.

19. In no case does Team Health Holdings exercise operational control over decisions made by affiliates like Paragon related to provider compensation (including use and implementation of RVU-based compensation) for medical providers, like the named Plaintiff, working for medical groups affiliated with the TEAMHEALTH brand and organization, like Paragon. At no time did Team Health Holdings hold the other Defendants out as its agent. On the other hand, Team Health Holdings recognizes and embraces its critical holding company activity of setting the overall mission, values, vision and goals of the TeamHealth organization, so its respective operating affiliates are aligned in promoting and furthering the overall goals of the organization and not acting in a manner adverse or antithetical to them.

20. Team Health Holding's limited nonoperating holding company activities do not include the following: (i) involvement, directly or indirectly, in the creation or implementation of the RVU plan provisions referenced in the 2AC in this action (or any other RVU plans used by any other entity associated with the TEAMHEALTH organization); (ii) communications to medical providers, like the named Plaintiff, under contract with affiliated medical groups (like Paragon), about their RVU compensation, including the communications described in paragraphs 166-175

of the 2AC[4] or (iii) the actual delivery or payment of compensation (including RVU compensation) to affiliated medical providers, including the named Plaintiff.

21. In paragraph 15 of the 2AC, Plaintiff attributes statements from a cherry-picked press release apparently from October 3, 2016, regarding a hospital acquisition in Florida. The statements are attributed to Leif Murphy who, at the time, was employed by AmeriTeam pursuant to an Employment Agreement dated September 16, 2016. He also, pursuant to that Employment Agreement, agreed to serve as President and Chief Executive Officer of AmeriTeam. The press release was issued from Tennessee, and communicating with the press, including issuing press releases, is among the support services AmeriTeam provides to operating affiliates pursuant to its Support Services Agreement with them.

22. The 2AC refers to miscellaneous references without specific citation from Team Health Holdings public SEC filings when it was a publicly traded company. *See* e.g., 2AC, ¶¶ 12-14 and 79. The references are mischaracterized to suggest that Team Health Holdings admits to doing business in Florida and taken completely out of context. Contrary to the misleading light in which they are portrayed, these filings are entirely consistent with the generic use of the TEAMHEALTH brand name and logo, and not in reference to any specific company, as I have consistently described herein. The 2016 10-k Annual Report (for the year ending December 31, 2015) provides, in pertinent part:

> ***Unless the context requires otherwise, references to "TeamHealth," "we," "our," "us" and the "Company" or "Organization" refer to Team Health Holdings, Inc., its subsidiaries and its affiliates, including its affiliated medical groups, all of which are part of the TeamHealth system. Separate subsidiaries or other affiliates of Team Health Holdings, Inc. carry out all operations and employ all***

---

[4] The 2AC does not attach the referenced e-mails, including the portions indicating all senders and recipients. However, the individuals referenced in the 2AC as being involved in sending those emails were not employed by TeamHealth Holdings and held no title with them and would not have sent those on behalf of Team Health Holdings. The sending of those e-mails would not have been part of Team Health Holdings limited holding company activities.

11

> *employees within the TeamHealth system. The terms "clinical providers," "TeamHealth physicians or providers," "affiliated providers," "our providers" or "our clinicians" and similar terms mean and include: (i) physicians and other healthcare providers who are employed by subsidiaries or other affiliated entities of Team Health Holdings, Inc., and (ii) physicians and other healthcare providers who contract with subsidiaries or other affiliated entities of Team Health Holdings, Inc. All such physicians and other healthcare providers exercise their independent professional clinical judgment when providing clinical patient care. <u>Team Health Holdings, Inc. is a holding company that does not contract with physicians to provide medical services nor does it practice medicine in any way.</u>[5] [6]*

It goes without saying that a national public company comprised of hundreds of operating affiliates could not practically issue (and is not required to issue) separate 10-K's for each of its hundreds of operating affiliates or prepare the 10-K without giving a generalized definition as to its structure as TEAMHEALTH did (as excerpted above).

23. Similarly, the 2AC refers to select pages to a deposition that I gave in another case. (*See, e.g.,* 2AC at ¶¶ 75(a)-(n) , 81, 82). The cherry-picked, paraphrased excerpts are consistent with the statements made herein, although, as mentioned, they become indecipherable when they refer to things or conduct attributed to the "Team Health Organization" without reference to the specific affiliate involved, as I have endeavored to do herein. In paragraph 75(c), (d), and (f), the 2AC alleges that HCFS enters into billing agreements with affiliated medical groups because these

---

[5] I have carefully read the generalized assertions in the 2AC of alleged deficiencies of the operating subsidiaries comprising the TeamHealth organization in adhering to corporate formalities or not being appropriately capitalized. Without specifics regarding these alleged deficiencies and regarding other generalized assertions about "siphoning" of funds, etc., I am unable to respond to these generalized assertions other than by generally indicating as I have throughout the Supplemental Declaration, that all operating subsidiaries across the TeamHealth organization (including the named defendants in this case) endeavor to fully comply with the requisite corporate formalities and capitalization requirements under their respective organizational documents and/or under the state laws in which they are unincorporated and do not engage the alleged improper "siphoning" or misuse of funds.

[6] An excerpt from the referenced 2016 10-k is attached.

12

groups lack that capacity. I believe that allegation is completely consistent with what I have indicated above about the role, purpose and function of HCFS. The same is true of the administrative support services AmeriTeam provides to affiliated medical groups, as I have described above, i.e., AmeriTeam can provide those services more efficiently and cost effectively than having each affiliate medical group create their own infrastructure (by hiring and setting up their own personnel) to perform those services on their own. In my experience, independent medical groups (i.e., those not affiliated with the larger brand or organization) often, if not routinely, subcontract out the same types of services to companies specializing in providing "back office" and billing services that these independent medical groups do not have the capability of performing and often have no interest in performing on their own, preferring just to hire a third party to provide these services so the physicians—like our physicians—can focus on practicing medicine.

24. The 2AC refers, without any context whatsoever, to a generalized, statement I made in a deposition to the effect "that somebody always answers to somebody." The 2AC then goes on, without any support whatsoever, to draw the self-serving inference from this cherry-picked testimony that persons working for specific medical groups affiliated with the TEAMHEALTH brand answer to "somebody" working for Team Health Holdings. That assumption is neither what I meant nor remotely what I said in the referenced deposition. It is also completely inaccurate.

25. The Corporate Integrity Agreement ("CIA") referenced in ¶ 81 of the 2AC was entered into by Team Health Holdings, Inc., at the insistence of the Government because, at the time, Team Health Holdings, Inc., was the publicly traded company and the ultimate parent company of the TEAMHEALTH organization. In 2015, a subsidiary of Team Health Holdings acquired IPC Healthcare (a/k/a IPC), which, at the time, was a competitor of TEAMHEALTH. The

13

billing improprieties alleged by the government against IPC (and resolved by the Settlement Agreement and CIA) pre-dated the acquisition of IPC and had nothing to do with the conduct of Team Health Holdings or any of the operating affiliates of the TEAMHEALTH organization. The CIA and Settlement Agreement covered the 29 "IPC" operating subsidiaries acquired and did not result in Team Health Holdings exercising any operational control over any of the IPC subsidiaries that were also party to the CIA and Settlement Agreement. Such control over the 29 IPC entities remained with the Board and Senior Management of IPC. The CIA and Settlement Agreement, which are based on alleged billing improprieties by a competitor (IPC) that TEAMHEALTH acquired years after the billing improprieties were alleged to have occurred, has no connection whatsoever to the conduct alleged in the 2AC and no bearing on the fact that Team Health Holdings did not conduct business in Florida.

14

Under penalties of perjury, I declare that the foregoing facts are true and correct.

_____
John R. Stair

15

10-K 1 tmh-201510k.htm 10-K

Table of Contents

---

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## Form 10-K

☑ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934.**

For the fiscal year ended December 31, 2015

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934.**

For the transition period from                to

Commission File Number 001-34583

# Team Health Holdings, Inc.
(Exact name of registrant as specified in its charter)

| Delaware | 36-4276525 |
|---|---|
| (State or other jurisdiction of incorporation) | (I.R.S. Employer Identification No.) |

265 Brookview Centre Way
Suite 400
Knoxville, Tennessee 37919
(865) 693-1000
(Address, zip code, and telephone number, including area code, of registrant's principal executive office.)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange where registered |
|---|---|
| common stock, par value $0.01 per share | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☑   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐   No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 and 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter periods that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☑   No ☐

Table of Contents

## PART I

**Item 1.**  *Business*

*Unless the context requires otherwise, references to "TeamHealth," "we," "our," "us" and the "Company" or "Organization" refer to Team Health Holdings, Inc., its subsidiaries and its affiliates, including its affiliated medical groups, all of which are part of the TeamHealth system. Separate subsidiaries or other affiliates of Team Health Holdings, Inc. carry out all operations and employ all employees within the TeamHealth system. The terms "clinical providers," "TeamHealth physicians or providers," "affiliated providers," "our providers" or "our clinicians" and similar terms mean and include: (i) physicians and other healthcare providers who are employed by subsidiaries or other affiliated entities of Team Health Holdings, Inc., and (ii) physicians and other healthcare providers who contract with subsidiaries or other affiliated entities of Team Health Holdings, Inc. All such physicians and other healthcare providers exercise their independent professional clinical judgment when providing clinical patient care. Team Health Holdings, Inc. is a holding company that does not contract with physicians to provide medical services nor does it practice medicine in any way.*

### Our Company

We believe we are one of the largest suppliers of outsourced healthcare professional staffing and administrative services to hospitals and other healthcare providers in the United States, based upon revenues, patient visits, and number of clients. We serve approximately 3,400 civilian and military hospitals, clinics and physician groups in 47 states with a team of more than 18,000 affiliated healthcare professionals, including physicians, physician assistants, nurse practitioners, and nurses. We recruit and contract with healthcare professionals who then provide professional services within third-party healthcare facilities. We are a physician-founded organization with physician leadership throughout all levels of our organization. Since our inception in 1979, we have provided outsourced services in emergency departments (EDs). We also provide comprehensive programs for anesthesiology, inpatient services (hospitalists comprising the specialties of internal medicine, orthopedic surgery, general surgery and OB/GYN), scribes, ambulatory care, pediatrics, post-acute care and other healthcare services, by providing permanent staffing that enables the management teams of hospitals and other healthcare facilities to outsource certain management, recruiting, hiring, payroll, billing and collection and benefits functions.

EDs are a significant source of hospital inpatient admissions with a majority of admissions for key medical service lines starting in EDs, making successful management of this department critical to a hospital's patient satisfaction rates and overall success. This dynamic, combined with the challenges involved in billing and collections and physician recruiting and retention, is a primary driver for hospitals to outsource their clinical staffing and management services to companies such as ours. For the year ended December 31, 2015, our clinicians provided services to over 15 million patients within our EDs. Our net revenues from ED contracts increased by approximately 88% from the beginning of 2011 through 2015, or at a compound annual growth rate of approximately 17.0%. We have long-term relationships with customers under exclusive ED contracts with an approximate 96% renewal rate and a 93% physician retention rate as of December 31, 2015 (calculated on a preceding 12 months basis). The EDs that we staff are generally located in mid-sized to larger hospitals. We believe our experience and expertise in managing the complexities of these high-volume EDs enable our hospital clients to provide higher quality and more efficient physician and administrative services. In this type of setting, we can establish stable long-term relationships, recruit and retain high quality physicians and other providers and staff, and obtain attractive payor mixes and reasonable margins.

The range of services that we provide to our clients includes the following:

- recruiting, scheduling and credential coordination for clinical and non-clinical medical professionals;
- coding, billing and collection of fees for services provided by medical professionals;
- provision of experienced medical directors;
- administrative support services, such as payroll, professional liability insurance coverage, continuing medical education services and management training;
- claims and risk management services; and
- standardized procedures and operational consulting.